

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1465 | **DATE** | 7/23/2003 |
| **CASE TITLE** | Dr. Brian McDonough etc. et al. Vs. John Bergan | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss the complaint is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 2 5 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | 03 JUL 24 PM 3:00 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DR. BRIAN McDONAGH, individually, and )
ILLINOIS PHLEBOLOGY ASSOCIATES, an )
Illinois professional corporation, )
)
                Plaintiffs, )
)
  vs. ) No. 03 C 1465
)
JOHN BERGAN, )
)
                Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Brian McDonagh and Illinois Phlebology Associates brought this action against defendant John Bergan alleging defamation, tortious interference with economic advantage, unfair competition and civil conspiracy arising from statements that Bergan allegedly made about a medical process developed by the plaintiffs. Defendant filed a motion to dismiss the complaint in its entirety for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, defendant's motion is granted.

## BACKGROUND

Plaintiffs are physicians who specialize in the treatment of varicose veins using a procedure known as sclerotherapy, whereby a solution is injected into the veins to sclerose them. In 1992, plaintiff Brian McDonagh developed a method of sclerotherapy now known as COMPASS, which he presented to the World Congress of Phlebology in 1995. This method, which uses ultrasound technology to guide the injections, is allegedly less invasive and less expensive than traditional surgical treatment. Defendant John Bergan is a well-known vascular surgeon who is allegedly financially involved in a surgical method of treating varicose



veins which is known as VNUS Closure.

Plaintiffs allege that Bergan is frequently consulted by numerous individuals and entities, including insurance companies, regarding varicose vein treatments. They claim that Bergan, along with other unnamed parties who have a financial stake in VNUS Closure, engaged in a scheme to disparage COMPASS in an effort to advance VNUS Closure. In furtherance of this scheme defendant allegedly told various medical societies and insurance carriers that sclerotherapy was "not good medicine" and that the costs of sclerotherapy should not be covered by health insurance providers.

Plaintiffs specifically allege that defendant, in connection with insurance policy reviews, has stated:

> "a. that a recent article finding COMPASS more effective than surgical alternatives, peer reviewed by surgeons and published in the leading publication in this field, the Journal "Phlebology," is baseless and false;
> b. that the editors of "Phlebology" "must have been too busy" and let the referenced article through for publication "by mistake" (in fact, Bergan is himself a member of the Editorial Advisory Board of "Phlebology" and the article was reviewed for approximately nine months before publication);
> c. that the COMPASS protocol could not close the sapheno-femoral junction and the greater saphenous vein and therefore was not a viable treatment alternative;
> d. that the accessory branches of veins, feeders and below knee greater saphenous vein (which are treated by the COMPASS protocol but not by VNUS Closure) are "irrelevant" or should be treated by procedures not covered by insurance;
> e. that the complete regeneration of the varicose or accessory vein after surgical treatment does not constitute a failure of the treatment;
> f. that an information Table (regarding the failure rate of surgical procedures) attached to the referenced COMPASS article was invalid because "most of the studies referenced" in the Table "were for high ligation and not for stripping";
> g. that the COMPASS treatment protocol is not an advisable or effective method to treat most varicose vein cases; and
> h. that the VNUS Closure protocol for the treatment of varicose vein disease is superior to COMPASS and a more advisable protocol in most

if not all cases." (Complaint, ¶ 11).[1]

As a result of these alleged statements, plaintiffs claim that insurers have denied coverage for sclerotherapy and many patients therefore choose not to undergo the treatment.

## DISCUSSION

In deciding a Rule 12(b)(6) motion to dismiss or strike a pleading we must assume the truth of all well-pleaded factual allegations, making all inferences in the non-movant's favor. Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 420 (7th Cir. 1994). The court should dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### Count I - Defamation

In order to state a claim for defamation, plaintiffs must allege facts showing that the defendant made a false statement of fact concerning the plaintiff, that there was an unprivileged communication of the statement to a third party, and that plaintiffs were damaged by the publication. Myers v. The Telegraph, 332 Ill. App. 3d 917, 922, 773 N.E.2d 192, 197 (5th Dist. 2002).

A statement of opinion about matters of public concern that does not contain fully provable factual elements is entirely protected by the Constitution. Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990). This protection applies to all statements that cannot be reasonably construed as factual statements about an individual. Id. Under Illinois law, such a statement is not actionable if it is an opinion relating to an individual's acts rather than the individual, the listener can perceive a factual basis for the statements and draw his or her own

---

[1] It is unclear whether any of those representations were made within the applicable statute of limitations.

conclusions, and the statement relates to a matter of public concern. Lancaster Foundation v. Skolrich, 1992 WL 211063, *3 (N.D. Ill. 1992). More importantly, the Illinois courts give heightened protection to statements about medical science, a matter of public concern where widely varied approaches and opinions exist. Aroonsakul v. Shannon, 279 Ill. App. 3d 345, 353, 664 N.E.2d 1094, 1100 (2nd Dist. 1996), *citing* Spelson v. CBS, Inc., 581 F. Supp. 1195, 1202 (N.D. Ill. 1984).[2]

In Aroonsakul, defendant allegedly attacked plaintiff's treatment of numerous incurable diseases, stating that the plaintiff had no research to substantiate her claims. 279 Ill. App. 3d at 348, 664 N.E.2d at 1097. She stated that the plaintiff's method was "just as outrageous as saying that toenail polish cures Parkinson's Disease, to me." *Id.* The court found that these statements were about plaintiff's treatment methods rather than defamatory statements about plaintiff individually. 279 Ill. App. 3d at 353-54, 664 N.E.2d at 1100. As a result, the statements were constitutionally protected opinions. *Id.*

This is not to say that all defendants are immune from suit for defamation when speaking about other physicians. Statements that impugn the character or qualifications of a physician are clearly actionable. Barakat v. Matz, 271 Ill. App. 3d 662, 648 N.E.2d 1033 (1st Dist. 1995); Erickson v. Aetna Life & Casualty Co., 127 Ill. App. 3d 753, 469 N.E.2d 679 (2nd Dist. 1984). In Barakat, a doctor who was reviewing the claims of another told a workers' compensation insurer that plaintiff's "practice was a joke" and that the plaintiff was "not any good as a doctor." 271 Ill. App. 3d at 672, 648 N.E.2d at 1042. Because these were not

---

[2] We note that this differs from a privileged communication of a factual statement. Generally, when a physician communicates facts to an insurance carrier regarding the advisability of coverage, such a statement is protected by a qualified privilege. See Rodriguez-Erdmann v. Ravenswood Hospital Medical Center, 190 Ill. App. 3d 24, 32, 545 N.E.2d 979, 984 (1st Dist. 1989). Such a privilege can be overcome by a showing that the defendant acted with an intent to harm the plaintiffs, as plaintiffs clearly allege here. *Id.* Expressions of opinion however are protected by the First Amendment and are never actionable, regardless of intent, because they cannot be proven true or false. Spelson, 581 F. Supp at 1202.

expressions of disagreement over medical treatments, but rather statements about the professional conduct and character of the plaintiff, the court held that they were actionable. *Id.*

The statements allegedly made by Bergan closely resemble those in Aroonsakul. If plaintiffs' allegations are true, defendant criticized their method of treating varicose veins and their research in support of this method. The alleged statements are not capable of being proven true or false. Moreover, as in Lancaster Foundation, the statements provided third parties who heard them a factual basis with which they could draw their own conclusions about sclerotherapy and the research in support of it. 1992 WL 211063 at *3. According to Illinois law, disagreements of this type amongst medical professionals should be settled by discussion and research in the medical community, not by the courts. While courts certainly do not sanction the abuse of a position of trust by a physician, there is no actionable claim for defamation unless defendant makes *factually* misleading statements.

Plaintiffs also fail to allege that defendant's statements concerned them, as is required for a defamation claim. As stated above, the alleged statements concerned COMPASS, sclerotherapy or the research supporting plaintiffs' methods. While it is true that a defamatory statement may be actionable even if it does not mention plaintiffs by name, third parties must be able to reasonably understand that the statement refers to the plaintiffs. Beresky v. Teschner, 64 Ill. App. 3d 848, 851, 381 N.E.2d 979, 981 (2nd Dist. 1978). Defendant never actually referred to a *person* in any of the alleged statements, but rather to a *process*. Plaintiffs do not allege that the insurance carriers knew that they were involved in the development of COMPASS or that any third parties understood the statements to be about them as individuals.

Count II - <u>Tortious Interference</u>

To state a claim for tortious interference with economic advantage, plaintiffs must allege a reasonable expectation of a business relationship, the defendant's knowledge of that relationship, and purposeful interference in the relationship that leads to damages. <u>Fellhauer v. City of Geneva</u>, 142 Ill. 2d 495, 511, 568 N.E.2d 870, 878 (Ill. 1991). In addition, plaintiffs must allege that defendant has committed some impropriety while interfering. <u>Dowd & Dowd, Ltd. v. Gleason</u>, 181 Ill. 2d 460, 485, 693 N.E.2d 358, 371 (Ill. 1998).

Plaintiffs do not sufficiently allege purposeful interference by the defendant in their business relationships. They admit that the defendant did not contact the insurance carriers, but rather the carriers asked him to serve as a consultant. In fact, in the only specific example of interference alleged in the complaint, defendant was not even involved until the appeals process, weeks after the coverage for sclerotherapy was denied. Plaintiffs simply allege that defendant recommended to insurance carriers that they not cover costs for sclerotherapy – not enough to state a claim for tortious interference. Public policy dictates that the right of the defendant to render his opinion overcomes the plaintiff's property right in the economic advantage. <u>Turner v. Fletcher</u>, 302 Ill. App. 3d 1051, 1058, 706 N.E.2d 514, 519 (4th Dist. 1999).

Count III - <u>Unfair Competition</u>

The tort of unfair competition in Illinois has been largely codified by the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 *et seq.* (UDTPA). The UDTPA allows plaintiffs to seek injunctive relief, but not damages, upon a showing that they have been harmed by a competitor's business practices. 815 ILCS 510/3; <u>Smith v. Prime Cable of Chicago</u>, 276 Ill. App. 3d 843, 860, 658 N.E.2d 1325, 1337 (1st Dist. 1995). While the plaintiffs do not cite to the statute in their complaint, their specific allegations have been codified by the

UDTPA, which states that it is a deceptive trade practice when a defendant "disparages the goods, services or business of another by false or misleading representation of fact." 815 ILCS 510/2(8). While the UDTPA does not entirely preempt the common law of deceptive trade practices, plaintiff does not allege a separate common law tort that would be the basis for relief other than that provided by the UDTPA. *See* Custom Business Systems, Inc. v. Boise Cascade Corp., 68 Ill. App. 3d 50, 52-53, 385 N.E.2d 942, 944 (2nd Dist. 1979).

In any case, in order to state a claim for relief plaintiffs need to allege that defendant made false representations of fact about plaintiffs' services. As stated above, the alleged statements are defendant's medical opinions about the effectiveness of sclerotherapy and COMPASS specifically. Again, we treat statements about medical science differently from statements in other areas because of the importance of encouraging public debate for the benefit of patients. Aroonsakul, 279 Ill. App. at 353, 664 N.E.2d at 1100.

Medical statements are not entirely immune from characterization as false statements. Plaintiffs cite to Mead Johnson & Co. v. Abbott Laboratories, 201 F.3d 883 (7th Cir. 2000) and Abbott Laboratories v. Watson Pharmaceuticals, Inc., 2001 WL 826870 (N.D. Ill. 2001), as support for their claim that statements about medical science are frequently actionable in Illinois. Both, however, are easily distinguishable. Both Mead Johnson and Abbott Laboratories involved claims for false advertising under Section 43 of the Lanham Act, 15 U.S.C. § 1125. In Mead Johnson, defendants claimed that their infant formula was the "1st choice of doctors," despite the fact that survey evidence did not entirely support this claim. 281 F.2d at 883-84. Likewise, in Abbott Laboratories, the defendant made clear misrepresentations as to the FDA approval of its competitor, claiming that because plaintiff's application with the FDA was still pending, the product was unsafe. 2001 WL 826870 at *2.

In this case, no such representation was made. Further, those cases do not involve a defendant doctor opining about the efficacy of a medical procedure. While plaintiffs disagree with defendant's characterization of their process and their research, they cannot say that he was factually mistaken when giving his opinion.

Count IV - Civil Conspiracy

Under Illinois law, a civil conspiracy consists of a combination of two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means. Adcock v. Brakegate, Ltd., 164 Ill. 2d 54, 62-63, 645 N.E.2d 888, 894 (Ill. 1994). The function of the claim is to extend tort liability beyond the active wrongdoer. *Id.* In order to state a claim for civil conspiracy a plaintiff must allege both an agreement between two or more parties and an act in furtherance of the agreement. *Id.* The alleged act in furtherance must itself be tortious or unlawful in character. *Id.*

While plaintiffs allege that defendant reached agreement with multiple unnamed parties to denounce sclerotherapy, they fail to sufficiently allege any tortious acts in furtherance of the agreement. Because the agreement itself is not enough, they fail to state a claim for civil conspiracy.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

July 23, 2003.